**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIG ALAN SCHULTE, | ) | CASE NO. 1:24-CV-01274-DAR |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Craig Alan Schulte ("Schulte" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Error and AFFIRM the Commissioner's decision.

## II. Procedural History

On March 18, 2022, Schulte filed applications for DIB, alleging a disability onset date of October 26, 2020 and claiming he was disabled due to lymphoma, immunodeficiency, psoriasis, migraines, and anxiety. (ECF No. 6, PageID #: 91, 181, 270). The application was denied initially and upon reconsideration, and Schulte requested a hearing before an administrative law judge ("ALJ"). (ECF No. 6, PageID #: 102, 112, 116). On August 9, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 6, PageID #: 43, 66, 68, 78). On August 25, 2023, the ALJ issued a written decision finding Schulte

1

was not disabled. (ECF No. 6, PageID #: 43–57). The ALJ's decision became final on June 14, 2024, when the Appeals Council declined further review. (ECF No. 6, PageID #: 27).

On July 26, 2024, Schulte filed his Complaint to challenge the Commissioner's final decision.  (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 7, 10, 11). Schulte asserts the following assignment of error: "[t]he ALJ relied on two jobs that are obsolete and the third job does not exist in significant numbers in the national economy." (ECF No. 7 at 3). Thus, Schulte argues, the Commissioner failed to meet his burden to prove that jobs that Schulte can perform exist in significant numbers in the national economy. (ECF No. 7 at 8).

## III. Background

### A.  Relevant Hearing Testimony

During the August 9, 2023 hearing, Schulte testified that he suffers from chronic fatigue—feeling especially fatigued after he receives his monthly infusion treatments—pain on his left side due to his psoriatic arthritis, occasional double vision, and migraines about once or twice per month. (ECF No. 6, PageID #: 70, 76).  He testified that he experiences pain "pretty much every day" and rates his pain from a 4-7 on a 1-10 scale. (ECF No. 6, PageID #: 71). Finally, he explained that he possibly could walk up to a mile on a good day and possibly only five minutes on a bad day and testified that he could likely lift up to only thirty pounds. (ECF No. 6, PageID #: 71–72). Vocational expert Lynn Smith also testified at Schulte's hearing and explained that a hypothetical person with Schulte's age, education, work experience, and RFC could not perform Schulte's past work as a package handler (DOT 929.687-030) but could perform the work of an order clerk (DOT 209.576-014), a phone quotation clerk (DOT 237.367-046), and a charge account clerk (DOT 205.367-014). (ECF No. 6, PageID #: 79–80). Expert Smith testified that there were approximately 7,000 order clerk positions, 30,000 phone quotation clerk positions, and 11,000 charge account clerk positions nationally. (ECF No. 6, PageID #: 80). Schulte challenges the ALJ's reliance on

the vocational expert's testimony—claiming that two of the jobs the vocational expert identified as work that Schulte could perform are obsolete and that the third does not exist in significant numbers in the national economy. (ECF No. 7 at 7).

## B. Relevant Work Evidence

The ALJ summarized his findings related to Claimant's ability to perform other work in the national economy:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, his ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the undersigned asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.
>
> The vocational expert testified that given all of these factors such an individual would be able to perform the requirements of representative occupations. Examples of such occupations, the relevant Dictionary of Occupational Titles (DOT) references, and the estimated number of jobs in each occupation are as follows:

| Occupation/DOT | Exertion | SVP | National |
|---|---|---|---|
| Order Clerk | | | |
| DOT 209.567-014 | sedentary | SVP2 | 7,000 |
| Phone Quotation Clerk | | | |
| DOT 237.367-046 | sedentary | SVP2 | 30,000 |
| Charge Account Clerk | | | |
| DOT 205.367-014 | sedentary | SVP2 | 11,000 |

> These examples are evidence of a "significant number" of jobs to which the claimant can be expected to make a successful vocational adjustment (20 CFR 404.1566). The question of whether a significant number of jobs exists in light of a vocational expert's testimony is ultimately left to the judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation. *Sias v. Secretary of HHS*, 861 F.2d 475 (6th Cir. 1988). In [a] more recently decided case, *Cunningham v. Astrue*, Case No. 08-3848 (6th Cir. 2010), unreported, the Court reiterated that there is

3

no "magic number" that qualifies as "significant" for purposes of satisfying this prong of the disability inquiry. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Rather, the determination is a fact-specific inquiry, guided by common sense:

> "We know that we cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number of jobs. . . . A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation."

> *Id.*

After considering the evidence in this case, the undersigned finds that the occupations and jobs enumerated by the vocational expert constitute significant numbers.

Pursuant to Social Security Ruling 00-4p, the vocational expert's testimony is consistent with the information contained in the DOT.

Based on the testimony of the vocational expert and considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Accordingly, applying Medical-Vocational Rule 201.28 as a framework for decision-making, the undersigned concludes that the claimant has not been under a disability, as defined in the Social Security Act.

(ECF No. 6, PageID #: 55–56).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

4

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with certain restrictions. Specifically, the claimant can occasionally lift 10 pounds and frequently lift and/or carry less than 10 pounds; he can stand for two hours, walk for two hours, and sit for six hours during an eight-hour workday; he can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; he can frequently stoop, kneel, crouch, and crawl; he can never work at unprotected heights or with moving mechanical parts; he can perform no commercial driving; and, he can make simple work-related decisions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 25, 1980 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 26, 2020, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 6, PageID #: 49, 54–56).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light

6

of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C. Discussion

Schulte raises one issue on appeal. He argues that in conducting his step five analysis, the ALJ "relied on two jobs that are obsolete and [a] third job [that] does not exist in significant numbers in the national economy," and, thus, the Commissioner failed to meet his burden at step five of proving that there are jobs that Schulte can perform that exist in significant numbers in the national economy. (ECF No. 7 at 7–8).

As Schulte suggests, at step five, the Commissioner has the burden of proof to show "that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "The step five analysis is meant to determine, given the severity of the impairments *already proven*, whether there are jobs in the economy which a claimant can perform." *Id.* (emphasis added). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation marks and citation omitted). "This substantial evidence may be in the form of vocational

expert testimony in response to a hypothetical question, . . . if the question accurately portrays [the claimant's] individual physical and mental impairments." *Baker v. Barnhart*, 182 F. App'x 497, 500 (6th Cir. 2006) (citations and internal quotation marks omitted); *see also O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 316 (6th Cir. 2020).

Schulte first argues that two of the three jobs that the vocational expert identified as jobs he could perform—phone quotation clerk and charge account clerk—are obsolete and therefore cannot properly "underpin the agency's denial in this case." (ECF No. 7 at 10).  In support of his assertions, Schulte cites *Kordeck v. Colvin*, No. 2:14-cv-431, 2016 WL 675814 at *9 (N.D. Ind. Feb. 19, 2016), an unpublished Northen District of Indiana case, in which the court wrote that the telephone quotation clerk and charge account clerk positions had "been reduced significantly in number if not rendered obsolete by the rise of the internet." (ECF No. 7 at 9) (quoting *Kordeck*, 2016 WL 675814, at *9). He argues that "[c]ommon sense" suggests that these jobs have been "largely if not entirely" replaced by the internet and then writes that many district courts within the Sixth Circuit have remanded cases to the Commissioner when vocational experts' "reliance on potentially obsolete job descriptions from the DOT raised sufficient doubt [as to] whether substantial evidence supported the ALJ's determination at the fifth step," citing several cases from outside this district. (ECF No. 7 at 9).

Schulte next argues that the job of order clerk—which he alleges is the only job identified by the vocational expert that remains in existence[1]—does not exist in significant numbers in the national economy. (ECF No. 7 at 10–11). He argues that the vocational expert's testimony that there are approximately 7,000 order clerk positions in the national economy was incorrect and

---

[1]     Schulte additionally argues that even if the charge account clerk were not obsolete, "history shows that it too no longer exists in significant numbers in the national economy" and cites a Northern District of New York case. (ECF No. 7 at 11) (citing *Corey S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-0678 (ML), 2021 WL 2935917, at *11 (N.D.N.Y. July 13, 2021).

asserts instead that, according to the SkillTRAN Job Browser Pro software, only 1,211 order clerk jobs existed nationally at the time the ALJ held his hearing. (ECF No. 7 at 10). Schulte asserts that the SkillTRAN software is considered reliable, even among vocational experts in this district, and is regularly used by vocational experts to generate the numbers of jobs in the national economy. (ECF No. 7 at 11, 12). Thus, he argues that the "significant discrepancy" between the vocational expert's testimony and the data from SkillTRAN "raises a significant doubt as to the reliability" of the evidence on which the ALJ based his step five determination, especially considering the Social Security Administration's recent "Emergency Message 24027," which emphasizes "the need for *current* job information." (ECF No. 7 at 12) (emphasis in original). Finally, Schulte concludes by arguing that the Supreme Court requires vocational expert testimony to possess "markers of reliability" in order to "clear the substantial-evidence bar" and that the vocational expert's testimony in this case failed to clear that bar. (ECF No. 7 at 12–13).

The Commissioner addresses both of Schulte's arguments in turn. First, the Commissioner asserts that under 20 C.F.R. § 404.1566 the DOT and vocational expert testimony are considered reliable sources of job information and that Schulte ignores a key Sixth Circuit case, *O'Neal v. Comm'r of Soc. Sec.*, which seriously undercuts his argument that the ALJ erred in relying on vocational expert testimony that the Claimant could perform the roles of phone quotation clerk and charge account clerk—positions that Schulte alleges are obsolete. (ECF No. 10 at 4). *O'Neal*, the Commissioner argues, in fact confirms that a "combination of vocational expert testimony and DOT entries can establish a significant number of jobs in the national economy." (ECF No. 10 at 5) (citing 799 F. App'x 313, 317 (6th Cir. 2020)). The Commissioner argues that the ALJ found that the vocational expert's testimony related to the phone quotation clerk and charge account clerk positions was consistent with the DOT, and Schulte presents no inconsistencies between the two,

nor did he raise the issue of these jobs being obsolete during his hearing. (ECF No. 10 at 5).

Regarding Schulte's claim that the order clerk position does not exist in significant numbers in the national economy, the Commissioner first argues that because the ALJ properly relied on vocational expert testimony and the DOT, the Court should reject Schulte's claim that the phone quotation clerk and charge account clerk positions are obsolete and should consider the vocational expert's testimony regarding the numbers of those jobs in the national economy. (ECF No. 10 at 6). The Commissioner continues by explaining that when the numbers of positions identified by the vocational expert for each of the three jobs are added together, there exist 48,000 total jobs in the national economy that Schulte could perform. (ECF No. 10 at 6). The Commissioner asserts that while the Sixth Circuit has refused to establish any certain number of jobs that constitutes a "significant" number at step five, the Sixth Circuit has found as few as 2,000 jobs to be a significant number, and, thus, asserts that 48,000 jobs is certainly significant. (ECF No. 10 at 6–7) (citing *Doran v. Comm'r of Soc. Sec.*, 467 F. App'x 446, 449 (6th Cir. 2012); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009)). Additionally, the Commissioner points out that Schulte's SkillTRAN Job Browser Pro evidence related to the number of order clerk jobs in the national economy was not before the ALJ at the time he made his decision, as Schulte did not present this evidence prior to or during his hearing. (ECF No. 10 at 7). Thus, the Commissioner argues, "the record under review by the Court does not contain any evidence—from SkillTRAN or any other source—to contradict the vocational expert's testimony regarding the job numbers available for the order clerk position." (ECF No. 10 at 7). The Commissioner then cites cases from other districts within the Sixth Circuit that have tackled this issue and found that because the SkillTRAN evidence was not before the ALJ, such evidence is irrelevant, as the reviewing court is limited to the record before the ALJ, and that because such evidence was not presented before

or during the hearing, the vocational expert's opinion remains unchallenged. (ECF No. 10 at 7) (citing *Gentry v. Kijakazi*, No. 22-cv-1235-TMP, 2023 WL 8650787, *8 (W.D. Tenn. Dec. 14, 2023) (citing *Williams v. Comm'r of Soc. Sec.*, No. 1:20-CV-11567, 2021 WL 3524115, *9 (E. D. Mich. June 23, 2021) *report and recommendation adopted sub nom. Williams v. Kijakazi*, No. 1:20-CV-11567, 2021 WL 3205001 (E.D. Mich. July 29, 2021))). The Commissioner urges this Court to similarly reject the SkillTRAN challenge here.  But, the Commissioner argues, even if this Court considers the SkillTRAN evidence, that evidence merely presents a conflict between the SkillTRAN data and the vocational expert's testimony, and the ALJ is entitled to rely on the vocational expert's testimony for job number information under the substantial evidence standard. (ECF No. 10 at 8). Finally, the Commissioner reiterates that "the ALJ relied on vocational expert testimony to find that there remained a significant number of jobs in the national economy" that Schulte could perform, and "[n]othing in the regulations or caselaw required the ALJ to do more." (ECF No. 10 at 8).

The undersigned agrees with the Commissioner and finds that the ALJ's decision finding that a significant number of jobs exist in the national economy that Schulte can perform is supported by substantial evidence. Schulte argues that the phone quotation clerk and charge account clerk positions are obsolete but provides no direct evidence of this being so. Rather, he asserts that "common sense" requires the finding, as these positions were likely eliminated due to the rise of the internet. (ECF No. 7 at 9). He additionally cites dicta from one case from the Northern District of Indiana, in which the court suggested, without citation to any authority, that these occupations were likely obsolete due to the internet. (ECF No. 7 at 9) (citing *Kordeck v. Colvin*, No. 2:14-CV-431-JEM, 2016 WL 675814, *9 (N.D. Ind. Feb. 19, 2016) (remanding for deficiencies related to the ALJ's credibility assessment of the claimant and the weighing of

11

evidence affecting the claimant's RFC). Further, Schulte did not present this argument or this dicta "evidence" to the vocational expert or ALJ before or during his hearing. In fact, Schulte failed altogether to cross examine the vocational expert, and her testimony that he could perform these three positions remained unchallenged until Schulte filed his brief on the merits. (ECF No. 6, PageID #: 80).

Schulte then cites a series of cases in which courts outside this district remanded matters to the Commissioner when vocational experts' reliance on "potentially obsolete" positions from the DOT "raised sufficient doubt [as to] whether substantial evidence supported the ALJ's determination at [step five]." (ECF No. 7 at 9) (citing *Wright v. Berryhill*, No. 4:18-CV-00021, 2019 WL 498855, at *9 (W.D. Ky. Feb. 8, 2019); *Westmoreland v. Berryhill*, No. 3:17-cv-00096, 2018 WL 1522118, at *4 (S.D. Ohio Mar. 28, 2018); *Rollston v. Comm'r of Soc. Sec.*, No. 1:16-CV-168, 2016 WL 6436676, at *4 (W.D. Mich. Nov. 1, 2016)). But Schulte fails to acknowledge that the Sixth Circuit, in *O'Neal v. Commissioner of Social Security*, recognized the confusion amongst the circuit's lower courts as to "whether the DOT continues to be a reliable source of information at step five" and "clarif[ied] that the DOT data can establish the existence of jobs in the national economy in significant numbers." 799 F. App'x 313, 317 (6th Cir. 2020).

In fact, Sixth Circuit case law makes clear that ALJs may rely on the DOT to establish that work that a claimant can perform exists in the national economy. *Id. See also Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). While, in his reply, Schulte acknowledges that *O'Neal* rejects the conclusion that the DOT is an obsolete and unreliable source of job information, he argues it does not reject the "conclusion" from *Kordeck* that found these occupations are obsolete. (ECF No. 11 at 2). While this may be true, Schulte presents no direct evidence that these jobs are obsolete. The "conclusion" he refers to in *Kordeck* is not law—as the court remanded on other

12

grounds—let alone binding law on this Court and does not cite to any authority showing that these positions no longer exist. 2016 WL 675814, *5, 8, 9. And while the DOT is several years old, as Schulte notes in his brief, the Social Security Administration recently released Emergency Message 24026, which identified 114 positions within the DOT that were found to be "isolated"— "exist[ing] only in very limited numbers in relatively few locations outside of the region where [the claimant lives]"— and explained that adjudicators may not support a "not disabled" finding by citing to any of those identified occupations. Social Security Administration, EM-24026, *Isolated Occupations We Will Not Use to Support a "Not Disabled" Finding at Step Five of the Sequential Evaluation Process*, https://secure.ssa.gov/apps10/reference.nsf/links/06212024021759PM  (last  visited  Mar.  11, 2025). (quoting 20 C.F.R. § 1566(b)). In Emergency Message 24027, the Social Security Administration additionally identified thirteen positions that cannot support a finding of "not disabled" at step five without additional evidence from the vocational expert

> "supporting the adjudicator's conclusion that, as the occupation is currently performed:
> - Its requirements are consistent with the individual's RFC, and
> - It exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant."

Social Security Administration, EM-24027 REV, *Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process*, https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM  (last  visited  Mar.  11, 2025).

The positions of phone quotation clerk and charge account clerk were neither removed as "isolated" positions nor put on the list of positions requiring the vocational expert to present additional evidence to support a not-disabled finding.

13

Additionally, the Code of Federal Regulations authorizes the ALJs to use the services of vocational experts when "the issue in determining whether [a claimant] is disabled is whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 404.1566(e). And the Sixth Circuit "has held repeatedly that the testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step [five] that the claimant can perform other work." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004) (citing *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 481 (6th Cir. 1988)). *See also Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citations omitted) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'").  Here, Schulte presents no direct evidence that the phone quotation clerk and charge account clerk positions are obsolete. These positions remain included in the DOT and are not included on the Social Security Administration's lists of "isolated" or otherwise suspect positions. *See* EM-24046; EM-24027.  In determining that Schulte was not disabled at step five, the ALJ relied on the vocational expert's testimony that Schulte could perform the positions identified in the DOT as phone quotation clerk, charge account clerk, and order clerk, as the ALJ was permitted to do under Sixth Circuit precedent. See *Wilson*, 378 F.3d at 548, 549;  *O'Neal*, 799 F. App'x at 317. Such testimony serves as substantial evidence supporting the ALJ's determination at step five. *Wilson*, 378 F.3d at 549. Thus, the undersigned finds that the ALJ did not err in relying on this vocational expert testimony, which the ALJ found is consistent with DOT, despite Schulte's

14

current claims that some of the jobs that the vocational expert identified are obsolete.

As for Schulte's argument that there are not a significant number of jobs within the national economy that Schulte could perform and that the ALJ erred in relying on the vocational expert's testimony regarding the number of positions in the national economy, the undersigned's logic and findings remain similar to those detailed above. Sixth Circuit case law provides that an ALJ can rely on vocational expert testimony to establish that work that a claimant can perform exists in significant numbers in the national economy. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010); *O'Neal*, 799 F. App'x at 317.

Here, the ALJ relied on the testimony of the vocational expert in making his step five determination. Based on Schulte's age, education, work experience, and RFC, posed to her via the ALJ's hypothetical, the vocational expert identified three jobs that Schulte could perform—order clerk (DOT 209.567-014), phone quotation clerk (DOT 237.367-046), and charge account clerk (DOT 205.367-014). (ECF No. 6, at PageID #: 80). The vocational expert testified that there are approximately 7,000 order clerk, 30,000 phone quotation clerk, and 11,000 charge account clerk positions nationally. (ECF No. 6, at PageID #: 80). The ALJ found that these examples given by the vocational expert constituted a significant number of jobs that Schulte could perform. (ECF No. 6, at PageID #: 56).

As described above, the undersigned is not persuaded by Schulte's argument that the ALJ erred in considering the vocational expert's testimony that Schulte could perform both the phone quotation clerk and charge account clerk positions because they are obsolete. Thus, when considering if the ALJ erred in finding that there were a significant number of jobs that Plaintiff could perform, the undersigned considers the number of jobs that the vocational expert provided for all three positions that she identified as jobs that Schulte could perform—totaling 48,000 jobs.

15

(*See* ECF No. 6, PageID #: 80 ). "There is no 'magic number' that qualifies as 'significant' for purposes of satisfying this prong of the disability inquiry." *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). Neither Congress nor the Commissioner has defined "significant," rather an ALJ must make this determination on a case-by-case basis. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). "Courts review for substantial evidence the ALJ's significant-number finding by determining whether it 'fits comfortably within what this court and others have deemed "significant."'" *Myers v. Comm'r of Soc. Sec.*, No. 3:24-CV-1390, 2025 WL 251152 (N.D. Ohio Jan. 21, 2025), *report and recommendation adopted*, No. 3:24 CV 1390, 2025 WL 474975 (N.D. Ohio Feb. 12, 2025) (citing *Moats*, 42 F.4th at 563) (quoting *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016))). There is substantial evidence that 48,000 jobs is enough to be considered a significant number of jobs, as the Sixth Circuit has found far fewer jobs to be significant. *Moats*, 42 F.4th at 563 (finding that 32,000 jobs fits within what the Sixth Circuit and other courts have found significant); *Taskila,* 819 F.3d at 905 (finding 6,000 jobs to be significant); *Nejat v. Comm'r of Soc. Sec.*, 359 F. Appx 574, 579 (6th Cir. 2009) (finding 2,000 jobs to be significant).

Schulte argues that 48,000 is not the accurate number of jobs that the ALJ should have considered in making his step five determination nor is it the number this Court should consider on review. Rather, Schulte argues, in addition to arguing that two of the jobs the vocational expert identified are obsolete and, thus, should not be considered in the job count (an argument the undersigned found unpersuasive above), that the vocational expert provided an incorrect estimate for the number of existing jobs for the remaining position of order clerk. (ECF No. 7 at 10). Schulte asserts that rather than consider the 7,000 job figure given by the vocational expert for the order

clerk position, the Court should instead consider the 1,211 figure he arrived at by utilizing SkillTRAN Job Browser Pro software, arguing that even this Court has recognized the reliability of SkillTRAN data.[2] (*See* ECF No. 7 at 10, 12) (citing *McFarland v. Comm'r of Soc. Sec.*, No. 1:16 CV 308, 2017 WL 1165945, at *2 (N.D. Ohio Mar. 29, 2017)). But despite asserting that SkillTRAN data is reliable, Schulte cannot point to any regulation or case law requiring vocational experts to rely on SkillTRAN Job Browser Pro to estimate the number of jobs available in the national economy, nor to any law indicating that if vocational experts do not utilize this software, or their estimates do not conform to SkillTRAN's, that their estimates lack trustworthiness or cannot constitute substantial evidence.

Further, the undersigned agrees with the Commissioner that it should not even consider the SkillTRAN estimate presented by Schulte in his brief. A reviewing court is constrained to reviewing the record that was before the ALJ to determine if the ALJ's decision was supported by substantial evidence. *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 685 (6th Cir. 1992); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003).[3] When evidence that was not

---

[2]     Schulte additionally argues that even if this Court did not find that the charge account clerk position is obsolete, "history shows that it too no longer exists in significant numbers in the national economy" and cites only a non-binding Northen District of New York case in support of this statement. (ECF No. 7 at 11) (citing *Corey S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-0678 (ML), 2021 WL 2935917, at *11 (N.D.N.Y. July 13, 2021)). Schulte does not provide SkillTRAN job number estimates for this position, nor does he state that the software altogether fails to include this position. The undersigned finds this argument, too, unpersuasive.

[3]     As the Commissioner notes in its brief, courts within the Sixth Circuit have more specifically found that SkillTRAN job estimates that claimants presented after the ALJ issued his disability decision were irrelevant, and the vocational expert testimony that the ALJ relied on remained unchallenged because the reviewing court is confined to review evidence that was available to the ALJ. *Gentry v. Kijakazi*, No. 22-CV-1235-TMP, 2023 WL 8650787, at *8 (W.D. Tenn. Dec. 14, 2023); *Williams v. Comm'r of Soc. Sec.*, No. 1:20-CV-11567, 2021 WL 3524115, *9 (E.D. Mich. June 23, 2021), *report and recommendation adopted sub nom. Williams v. Kijakazi*, No. 1:20-CV-11567, 2021 WL 3205001 (E.D. Mich. July 29, 2021).

before the ALJ at the time he issued his decision is offered to the district court on appeal, the court *may* remand the case to the ALJ so that the ALJ may consider the evidence, but only if the "claimant shows that (1) new material evidence is available and (2) good cause is shown for failure to incorporate such evidence into the prior proceeding." *Willis v. Sec'y of Health & Hum. Servs.*, 727 F.2d 551, 554 (6th Cir. 1984); 42 U.S.C. § 405(g). Here, Schulte did not present the SkillTRAN job numbers for the order clerk position to the ALJ during the hearing, nor did he request leave to include such evidence in the record following the hearing.[4] The ALJ did not have this data available to him at the time he issued his decision, thus, this Court should refrain from considering this evidence. Additionally, this Court cannot remand this matter to the ALJ so that the ALJ can consider this new evidence, for Schulte has not presented any evidence, as required by statute and Sixth Circuit precedent, that good cause exists for his failure to present this SkillTRAN data to the ALJ. *See Willis*, 727 F.2d at 554; 42 U.S.C. § 405(g).

Schulte was represented by counsel throughout the duration of this matter, including during the Zoom hearing before the ALJ at which the vocational expert testified. (ECF No. 6, PageID #: 63, 66). Schulte's attorney was given the opportunity to cross examine the vocational expert at this hearing and question her based on her testimony. (ECF No. 6, PageID #: 80). Thus, Schulte was given the opportunity to ask the vocational expert about the job numbers she identified, their accuracy, and how she formed those estimates. But Schulte's attorney declined to cross examine the vocational expert and failed to present the SkillTRAN job estimate for the order clerk position to the ALJ during the hearing or following the hearing before he reached his decision. (ECF No. 6, PageID #: 80). Therefore, the vocational expert's testimony remained unchallenged, and the

---

[4] Nor did he submit such evidence for the Appeals Council to review following the ALJ's decision.

ALJ was left with no reason to question the accuracy of that testimony.  The ALJ made his step five determination based on the evidence before him at the time of his decision, relying on the vocational expert's testimony, as he is permitted to do under Sixth Circuit law. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010); *O'Neal*, 799 F. App'x at 317. Because the vocational expert gave her testimony based on Schulte's age, education, experience, and the ALJ's hypothetical that accurately represented Schulte's RFC, it serves as substantial evidence supporting the ALJ's step five decision that a significant number of jobs exist in the national economy that Schulte can perform. *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). The undersigned finds the ALJ's decision is supported by substantial evidence and sees no reason to disturb it.

Schulte claims that the vocational expert testimony in this matter cannot constitute substantial evidence supporting the ALJ's decision because it lacks required markers of reliability and cites *Candice J. v. Comm'r of Soc. Sec.*, No. 5:22-CV-0902, 2023 WL 5739364 (N.D.N.Y. Sept. 6, 2023) and *Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) to support his argument. But Schulte appears to misunderstand *Biestek* or overestimate its relevance here. *Biestek* explains that sometimes a vocational expert's refusing to produce the data underlying her estimates related to job availability, combined with other aspects of the record, will "prevent her testimony from qualifying as substantial evidence"—like when she has "no good reason to keep the data private *and* her testimony lacks other markers of reliability." 587 U.S. at 108 (emphasis added). But *Biestek* further explains that the inquiry of when such failure to produce data upon request disqualifies vocational expert testimony from constituting substantial evidence is case-by-case, "as is usually true in determining the substantiality of evidence,"  and "takes into account all features of the vocational expert's testimony, as well as the rest of the administrative

record [and] defers to the presiding ALJ, who has seen the hearing up close." *Id.* Here, Schulte did not challenge the vocational expert's testimony before this Court's review. The vocational expert was not asked about the data underlying her job-number estimates, and she did not refuse to give such data. Further, prior to arguing on appeal in front of this Court that the jobs the vocational expert identified are either obsolete or do not exist in significant numbers in the national economy, Schulte identified no ways in which the vocational expert's testimony lacked markers of reliability. The administrative record in this case contains no evidence suggesting that the vocational expert's testimony was not credible or lacked markers of reliability. At the hearing, Schulte's counsel stipulated to the expert's qualifications, did not challenge her testimony, and chose not to cross examine her altogether. (ECF No. 6, PageID #: 78–80). Thus, the undersigned does not find that the vocational expert's testimony failed to meet the substantial evidence standard, and therefore, the ALJ did not err in relying on it. The undersigned further finds that the Commissioner met his burden of proving at step five that other work exists in the significant numbers in the national economy that Schulte can perform.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Schulte's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: March 12, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).